UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

LOKESH VUYYURU, et al.,

Plaintiff,

v.                                                      Action No. 3:10−CV−173

GOPINATH JADHAV, et al.,

Defendant.

MEMORANDUM OPINION

This matter comes before the Court on Commonwealth Defendants' and Private

Defendants' Motions to Dismiss (Docket Nos. 46 and 51), as well as Commonwealth

Defendants' and Private Defendants' Motions for Rule 11 Sanctions (Docket Nos. 49 and 60).[1]

The Court grants the motions to dismiss on the grounds stated below and therefore dismisses the

Amended Complaint.  The Court further grants the defendants' motions for Rule 11 sanctions

against Plaintiffs Lokesh Vuyyuru, Virginia Gastroenterology Associates, P.C. ("VGA"), and

Virginia Times, Inc.  The Court will grant the defendants' request for attorney's fees.  The Court

orders Plaintiff Lokesh Vuyyuru to show cause why the Court should not enjoin him from filing,

without this Court's permission, any lawsuit alleging an injury resulting from the Virginia Board

of Medicine's May 19, 2006, order revoking his license to practice medicine in the

Commonwealth of Virginia.

---

[1] The Commonwealth Defendants include defendants Judith Jagdmann, Robert McDonnell, Frank Pedrotty, John Stanwix, William Harp, Robert Nebiker, and the Virginia Board of Medicine.  The Private Defendants include Gopinath Jadhav, Petersburg Hospital Company, LLC d/b/a Southside Regional Medical Center, Community Health Systems Professional Services, Inc., Columbia/HCA John Randolph, Inc., Anant Damle, David Fikse, Linda Ault, Kamalesh Dave, Sharad Saraiya, and John Doe Defendants 1 to 10.

I. <u>Introduction</u>

    A. *Statement of the Case*

    The factual allegations that follow are based on a generous construction of the Amended Complaint. Plaintiff Lokesh Vuyyuru practiced gastroenterology at Southside Regional Medical Center ("SRMC") through 2003 and John Randolph Medical Center ("JRMC") through 2005. VGA is practice group Vuyyuru owns. During his time practicing at the hospitals, Vuyyuru reported what he considered incidents of malpractice and insurance fraud against SRMC, JRMC, and various physicians. Vuyyuru alleges the Justice Department gave him immunity for providing grand jury testimony relating to these incidents. In 2004, Vuyyuru formed Virginia Times, Inc., a corporation through which Vuyyuru published *Virginia Times*, a newspaper that publicized the incidents of malpractice and fraud he discovered at SRMC and JRMC.

    Beginning in 2000, SRMC and JRMC personnel allegedly began to retaliate against Vuyyuru for what he calls his "whistleblowing activities." (Am. Compl. ¶ 31, Docket No. 31.) The hospitals took internal personnel actions and reported complaints against him to governmental authorities. Vuyyuru claims ten anonymous parties and Defendant Kamalesh Dave threatened Vuyyuru and his family, in hopes of concealing the violations Vuyyuru reported to authorities. Defendant Sharad Saraiya, a doctor at JRMC, "took actions to cause Dr. Vuyyuru to lose his hospital privileges at JRMC," though Vuyyuru does not explain what actions Saraiya undertook to this end. (Am. Compl. ¶ 37.) Defendant Linda Ault, Vice President of JRMC, "caus[ed] Dr. Vuyyuru to be falsely blamed for the death of one patient and adverse medical outcomes for another patient." (Am. Compl. ¶ 38.) She also worked with Saraiya to cause Vuyyuru lose his place at JRMC. Again, Vuyyuru does not elaborate on how Ault achieved

these goals.  Vuyyuru alleges SRMC and JRMC officials caused businesses to stop advertising with Vuyyuru's newspaper, the *Virginia Times*, though he does not provide details to support this claim. Doctors also warned Vuyyuru JRMC officials were searching for ways to exact retribution against him.

The Virginia Board of Medicine ("the Board") began taking action against Vuyyuru in 2005.  The Board suspended his medical license on August 10, 2005, without notice or hearing. Then the Board began considering whether to revoke Vuyyuru's license.

The plaintiffs contend several defendants used the Board proceedings as a forum to retaliate against Vuyyuru.  For example, in early 2005, Defendant David Fikse, CEO of SRMC, filed a complaint with the Board about articles Dr. Vuyyuru published in the *Times* and "attached to [the complaint] medical records and information related to specific patients."  (Am. Compl. ¶ 42.)  This complaint served as the basis for the Board's action against him.  Vuyyuru asserts officials from SRMC and JRMC, along with JRMC's owner, Defendant Community Health Systems Professional Services ("CHSPS") urged the Board to take action against Vuyyuru.

According to the Plaintiffs, the Board and related personnel aimed to retaliate against Vuyyuru and used the proceedings to do so.  In June 2005, Board staff members participated in a meeting in which unidentified hospital staff members discussed filing a defamation claim against Dr. Vuyyuru based on articles from the *Virginia Times*.  At roughly the same time, Board staff members shredded records related to an investigation into the hospitals' peer review procedures prompted by Vuyyuru.  Those same staff members searched Vuyyuru's office "over the objection of Dr. Vuyyuru and without any warrant, subpoena, or court order[.]"  (Am. Compl. ¶ 64.)  Defendant Robert Nebiker, Director of the Virginia Department of Health Professions ("DHP"), did not disclose the existence of Fikse's complaint to the Board.  The hearing officer

prevented Vuyyuru from presenting evidence tending to show officials retaliated against him for reporting complaints against them. The Board also discovered records suggesting Vuyyuru was not responsible for a particular patient's death but, according to the plaintiffs, failed to disclose the discovery. Finally, Defendant William Harp, the Board's director, participated in the Board's deliberations on Vuyyuru's case, even though Vuyyuru claimed articles in the *Virginia Times* criticizing Harp had compromised his objectivity. The plaintiffs maintain that each of these acts stemmed from a broad-based plan to ensure the revocation of Vuyyuru's license.

The plaintiffs further contend the Office of the Attorney General, which provided the personnel to prosecute Vuyyuru's case, participated in this plan. Defendant Anant Damle served as an expert witness in Board proceedings against Vuyyuru. According to Vuyyuru, Damle misrepresented that he reviewed all of Vuyyuru's patients' files to prepare for his testimony. Defendant Frank Pedrotty, who presented the case against Vuyyuru and examined Dr. Damle, knew this representation was false and withheld certain patient files from Dr. Damle. Officials from the Attorney General's office eventually provided unspecified information to Dr. Damle in a "verbal report" about the patient files and then ordered the "administrative record" referring to this report destroyed. (Am. Compl. ¶¶ 57, 66.) In November 2005, at a Board hearing, the Board ordered Dr. Damle to review the complete records regarding Dr. Vuyyuru's patients. Vuyyuru allegedly witnessed Pedrotty instructing Dr. Damle not to alter his testimony against Vuyyuru, even in light of Dr. Damle's review of the files. Vuyyuru alleges Pedrotty's assistant, John Stanwix, assisted Pedrotty in coaching Damle. Damle also allegedly lied about his qualification to testify about conducting endoscopic retrograde cholangiopancreatography.

The Board ultimately revoked Vuyyuru's license on May 19, 2006. The plaintiffs see this decision as the culmination of an elaborate scheme to harass Vuyyuru for reporting incidents of malpractice and fraud by other health care providers. Vuyyuru, VGA, and the Virginia Times make three claims for relief stemming from the Board proceedings. First, they allege Damle's testimony constituted an abuse of process. Second, the plaintiffs claim JRMC, SRMC, and various hospital officials conspired to injure them by causing Vuyyuru to lose his license. *See* Va. Code §§ 18.2-499 & -500 (1994). Finally, the plaintiffs make several claims under the Racketeer Influenced and Corrupt Organizations Act. *See* 18 U.S.C. § 1962 (1988).

B. *Litigation History*

Vuyyuru has repeatedly attempted to air his grievances about the Board's proceedings in Virginia courts. Vuyyuru has filed several actions in state and federal court regarding his malpractice and fraud reporting and the Board's decision. After the Board revoked his license, Vuyyuru proceeded through the state administrative appeals process. Vuyyuru filed a rather exhaustive appeal with the Chesterfield County Circuit Court in accordance with the Virginia Administrative Process Act (VAPA). *See* Va. Code. § 2.2-4027. Vuyyuru set forth many of the arguments he articulates here—that Dr. Harp participated in the Board's deliberations, that the Attorney General's office was conflicted by representing the Board and prosecuting Vuyyuru's case, that the Board failed to act neutrally in considering Vuyyuru's case, and that Defendant Damle falsely testified that he reviewed the entirety of Vuyyuru's patients' records in preparation for his testimony. In January 2007, the Circuit Court concluded the Board's revocation was procedurally and substantively sound.

The Virginia Court of Appeals affirmed the Board's decision on January 15, 2008, ruling

that substantial evidence supported the Board's decision and the Board afforded Vuyyuru due process. The Court of Appeals expressly concluded Virginia law permitted nonmembers of the Board to sit in Board deliberations, allowed the Attorney General's office to represent the Board and prosecute Dr. Vuyyuru's case, and did not prohibit Board members from participating in both Vuyyuru's suspension and revocation hearings. *See Vuyyuru v. Va. Bd. of Medicine*, No. 0610-07-2, 2008 WL 122804 (Va. Ct. App. Jan. 15, 2008). The Virginia Supreme Court denied Vuyyuru's petition for appeal and then denied his petition for rehearing.

Vuyyuru filed a series of suits parallel to his administrative proceedings in state and federal court. In March 2006, before the Board revoked Vuyyuru's license, Vuyyuru and VGA filed a § 1983 action in this Court against Ann Hardy and Pamela Twombly, staff members of the DHP and Board, respectively, who searched his office pursuant to the Board's investigation. The court dismissed the case without prejudice on the basis of *Younger* abstention, so Vuyyuru could pursue state administrative remedies regarding the Board's revocation order. *Vuyyuru v. Hardy*, No. 3:06-CV-179 (E.D. Va. Nov. 16, 2006) (order).

Vuyyuru and VGA once again sued Hardy and Twombly in 2007, this time in Chesterfield County Circuit Court. The plaintiffs expressly sued Hardy and Twombly in their official capacities. Vuyyuru and VGA alleged the defendants' entry into his office violated § 1983 and constituted a conspiracy to injure Vuyyuru's business in violation of Virginia law. In May 2009, the state court sustained pleas of res judicata and collateral estoppel, finding the issues Vuyyuru raised "could have been and/or were properly litigated in Dr. Vuyyuru's appeal of the findings regarding the revocation of his medical license [in the 2006 administrative appeal]." *Vuyyuru v. Hardy*, No. CL06-242, slip op. 2 (Va. Cir. Ct. May 18, 2002). The judge asserted Vuyyuru's pleadings repeated many of the allegations Vuyyuru raised in his

administrative appeal and, therefore, Vuyyuru could have raised the claims arising from those allegations in his administrative appeal. He further decided Vuyyuru's conspiracy claims simply recited facts considered in the administrative appeal. The Supreme Court of Virginia denied Vuyyuru's petition for appeal.

Undeterred, Vuyyuru returned to federal court in 2008, this time representing himself. Naming nine of the defendants he sues in this action, Vuyyuru asserted several claims against individuals, public and private, who participated in the Board proceedings that resulted in his license revocation. Most of Vuyyuru's claims—including "conflicts of interest," "retaliation against a whistleblower," and "conspiracy to kill the patients"—are unrecognizable in law. Unable to make sense of Vuyyuru's allegations, the court dismissed the complaint without prejudice. *Vuyyuru v. Va. Bd. of Medicine*, No. 3:08-CV-301 (E.D. Va. Oct. 31, 2008) (memorandum order).

In March 2009, Vuyyuru sued thirty-eight defendants, including several named in this action, making similar factual claims to those he raises here. Vuyyuru filed *pro se*, but he later obtained an attorney. After counsel evaluated the factual and legal groundwork for Vuyyuru's claims, Vuyyuru voluntarily dismissed the action. *See Vuyyuru v. Jadhav, et al.*, No. 3:09-CV-149 (E.D. Va. Mar. 16, 2009). Finally, just over one month after filing this case, Vuyyuru and VGA returned again to Chesterfield Circuit Court. Naming six of the defendants in this action, the plaintiffs asserted a claim for fraud on the court and asked the court to vacate the Board's decision to revoke Vuyyuru's license. *Vuyyuru v. Virginia Bd. of Medicine*, No. CL10-987 (Va. Cir. Ct. May 7, 2010).

Both the Commonwealth and Private Defendants assert numerous grounds for dismissing the plaintiffs' claims. The Court will dismiss the plaintiffs' claims for reasons it explains below.

III. Claim Preclusion

The Commonwealth Defendants argue that all three of Vuyyuru's claims are precluded by prior litigation as to the Commonwealth Defendants. The Court agrees. Vuyyuru individually is precluded from raising the claims in the Amended Complaint.[2]

A federal court considering the preclusive effect of a state-court judgment must apply the law of preclusion of the state-court jurisdiction. 28 U.S.C. § 1738 (2000); *Exxon Mobil*, 544 U.S. at 293; *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 129 (4th Cir. 2000). § 1738 also requires a federal court to apply state preclusion law to an administrative adjudication reviewed by a state court. *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986); *Davenport v. N.C. Dep't. of Transp.*, 3 F.3d 89, 93 n.3 (4th Cir. 1993).

In Virginia, a claim raised in a second action is barred by failure to raise the claim in a first action, where (1) the same defendants, or defendants in privity with one another, defend both actions, (2) the second "claim or cause of action" arises out of the same conduct, transaction, or occurrence as did the first, (3) the plaintiff could have raised the claim in the first action, and (4) a final judgment on the merits decided the first action. *See* Va. Sup. Ct. R. 1:6(a) (2006); *Martin-Bangura v. Va. Dept. of Mental Health*, 640 F.Supp.2d 729, 738 (E.D. Va. 2009).

Vuyyuru's administrative appeal precludes this action. First, Commonwealth Defendants are in privity with the defendant in Vuyyuru's administrative appeal, the Board. Employees of the Commonwealth of Virginia sued in their official capacities are in privity with the Commonwealth and its agencies sued in a previous action. *Whitley v. Commonwealth*, 260 Va.

---

[2] In concluding that the claims by Vuyyuru are precluded, the Court has consulted the Board's May 19, 2006, order revoking Vuyyuru's license, Vuyyuru's appeal petition filed with the circuit court, the written opinions of the circuit court and the Virginia Court of Appeals, along with the complaints and judicial opinions from other actions Vuyyuru has filed. It is appropriate for the Court to use public records, the validity of which no party questions, in determining a complaint's legal sufficiency. *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

482, 538 S.E.2d 296, 299, 301 (Va. 2000); *Brooks v. Arthur*, 626 F.3d 194, 203 (4th Cir. 2010).[3]

In his administrative appeal, Vuyyuru opposed the Virginia Board of Medicine, a

Commonwealth agency. Here, Vuyyuru's claims run against each of the Commonwealth

Defendants in their official capacities.[4] Therefore, the Commonwealth Defendants are in privity

with the defendant from Vuyyuru's administrative appeal.

Second, the Amended Complaint and the claims Vuyyuru raised in his administrative

appeal arise from the same transaction. The Virginia Supreme Court defines a cause of action

"broadly as an assertion of particular legal rights which have risen out of a definable factual

transaction." *Allstar Towing, Inc. v. City of Alexandria*, 231 Va. 421, 344 S.E.2d 903, 905-06

(Va. 1986) (citation omitted).[5] Federal courts construing Rule 1.6(a) have applied the phrase

broadly to encompass the entire factual situation underlying the plaintiff's first action. In

*Martin-Bangura v. Virginia Department of Mental Health*, for example, allegations that the

plaintiff sexually harassed a coworker, and the plaintiff's resulting termination, gave rise to a

---

[3] *Whitley* is relevant to this case it dealt with issue preclusion. Virginia law treats doctrine of privity identically for purposes of claim and issue preclusion. *Rawlings v. Lopez*, 267 Va. 4, 591 S.E.2d 691 (Va. 2004).

[4] Vuyyuru argues that he has sued the Commonwealth Defendants in their personal capacities, but this contention is not dispositive. *See Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965-67 (9th Cir. 2010). Rather, every indication suggests he sues the Commonwealth Defendants officially. Courts deciding whether a plaintiff sues a governmental defendant in his official capacity consider whether "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or . . . restrain the Government from acting, or compel it to act." *County Bd. of Arlington, Va. v. U.S. Dept. of Transp.*, 705 F.Supp.2d 25, 29 (D.D.C. 2010) (citations omitted). In addition to considering the relief a plaintiff seeks, courts have also considered the plaintiff's statements in his complaint, briefing papers, and oral argument. *See Community House*, 623 F.3d at 965-67. Vuyyuru expressly sues Jagdmann and McDonnell in their official capacities, and all of his allegations against the other Commonwealth Defendants deal with actions they undertook while investigating, prosecuting, or presiding over Board proceedings. Furthermore, in his response to the Commonwealth Defendants' motion to dismiss, Vuyyuru asserts the Court could overturn the Board's disposition of his case and asks the Court to do so. A judgment overturning the Board's disposition would certainly "interfere with the public administration" in a manner characteristic of an official-capacity suit. *County Bd. of Arlington, Va.*, 705 F.Supp.2d at 29. Hence, the Court concludes Vuyyuru proceeds here against each of the Commonwealth Defendants in their official capacities.

[5] Before the Virginia Supreme Court adopted Rule 1.6(a), Virginia courts applied a transactional test to the question of whether a single set of facts gave rise to multiple claims. *See Allstar Towing, Inc. v. City of Alexandria*, 231 Va. 421, 344 S.E.2d 903 (Va. 1986). Then the Supreme Court adopted the narrower "same evidence" test in *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 576 S.E.2d 504 (Va. 2003). In response to *Davis*, the Supreme Court adopted Rule 1.6(a), reinstating the transactional approach of *Allstar Towing*. *See Martin-Bangura v. Va. Dept. of Mental Health*, 640 F.Supp.2d 729, 738 (E.D. Va. 2009).

state grievance procedure and the plaintiff's Title VII claim.  640 F.Supp.2d at 739.  The court

concluded the same transaction gave rise to the Title VII claim and the statutory grievance

procedure he pursued after being fired.  *Id.*  Vuyyuru's claims asserted in this action arise "out of

[the] definable factual transaction" of the Board's revocation proceedings—the very same factual

transaction underlying his administrative appeal.  *Allstar Towing*, 344 S.E.2d at 905-06.

Vuyyuru's administrative appeal contested all facets of the Board's revocation, from the Board's

partiality, to its failure to disqualify the Attorney General from representing the Board, to the

Board's assessment of the evidence against Vuyyuru.  Hence, the claims Vuyyuru raises here

arise from the same transaction underlying the claims he raised in those two proceedings.

Third, Vuyyuru could have raised the claims he raises here in his administrative appeal.

Under Virginia law, "claim" encompasses allegations a litigant raises in state administrative

proceedings, in which he seeks reversal of an administrative decision.  Rule 1:6(a) prohibits a

plaintiff from re-litigating a claim in a subsequent action

> whether or not the legal theory or rights asserted in the second or subsequent action were
> raised in the prior lawsuit, and regardless of the legal elements or the evidence upon
> which any claims in the prior proceeding depended, or the particular remedies sought.

The pertinent issue is whether a claimant had a forum to raise his allegations, not the particular

theory of liability he offers or form of recovery he seeks.  *Smith v. Ware*, 244 Va. 374, 421

S.E.2d 444, 445 (Va. 1992).  So long as he could have raised the allegations in an administrative

proceeding reviewed by a state court, the claimant could have raised his claim.  *See Martin-

Bangura*, 640 F.Supp.2d at 738.

In this case, almost all the allegations underlying Vuyyuru's three claims against the

Commonwealth Defendants either were litigated in his administrative appeal or could have been

litigated there.  Virginia law afforded Vuyyuru the opportunity to raise any and all potential fact-

findings or procedural failures on the part of the Board on appeal.[6]  Vuyyuru did just that.

Vuyyuru raised many of the issues he raises here in his 194-page petition appealing the Board's

decision, complaining extensively about the Board's objectivity.  The circuit court found the

allegations of bias lacked support in the record of the Board proceedings.  The Virginia Court of

Appeals reached the same conclusion.  *See Vuyyuru*, 2008 WL 122804, at *4-5.

   To the extent Vuyyuru raises new claims here, he could have raised them in his

administrative appeal.  Neither the Chesterfield Circuit Court nor the Virginia Court of Appeals

ruled on some of Vuyyuru's specific allegations of bias raised here—that Harp was biased owing

to certain accusations against him in *Virginia Times* articles and that Nebiker failed to disclose

Fikse's complaint against Vuyyuru—because Vuyyuru failed to raise them there.  It is

immaterial, in spite of Vuyyuru's claim to the contrary, that Vuyyuru seeks forms of relief here

that he did could not seek in his administrative appeal.  Under Virginia law, a plaintiff could

have raised a claim in a previous action so long as he had a forum to raise his allegations,

regardless of the form of relief allowed him.  *See Martin-Bangura*, 640 F.Supp.2d at 738.

   Finally, Vuyyuru's administrative appeal ended with a final judgment on the merits.

Under Virginia law, a judgment is final and on the merits if both parties have "presented all their

evidence and the court . . . properly understood the facts and correctly applied the law to the

facts."  *Highsmith v. Commonwealth*, 25 Va. App. 434, 489 S.E.2d 239, 241-42 (Va. Ct. App.

1997).  The Virginia Court of Appeals decided Vuyyuru's claims of bias on the part of the Board

and the Attorney General's office adversely to him.  The court made a thorough review of

---

[6] Under the VAPA, a party dissatisfied with an agency action may raise on appeal any error of law, including "(i)
accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority,
jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which
regulations may be made, and the factual showing respecting violations or entitlement in connection with case
decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the
substantiality of the evidentiary support for findings of fact."  Va. Code § 2.2-4027 (2007).

Vuyyuru's claims of error. The appeal became final when the Virginia Supreme Court denied Vuyyuru's petition for rehearing and Vuyyuru declined to pursue the appeal further.

Even if Vuyyuru's claims were not precluded by his administrative appeal, his 2007 action in Virginia circuit court precluded these claims. There, Vuyyuru sued Hardy and Twombly, staff members of the Board and the DHP, for § 1983 violations. He claimed Hardy and Twombly conducted their investigation and search of Vuyyuru's office in a harassing and biased manner aimed at injurying Vuyyuru's business. The judge stated that Vuyyuru's pleadings repeated many of the allegations Vuyyuru raised in his administrative appeal and, therefore, Vuyyuru could have raised the claims against the staff members arising from those allegations in his administrative appeal. He further decided Vuyyuru's conspiracy claims simply recited facts considered in the administrative appeal. *Vuyyuru v. Hardy*, No. CL06-242, slip op. 2 (Va. Cir. Ct. May 18, 2002). The Supreme Court of Virginia denied Vuyyuru's petition for appeal. *Vuyyuru et al. v. Hardy*, No. CL06-2642 (Va. Apr. 8, 2010).

First, the Commonwealth Defendants are in privity with the defendants in the 2007 circuit court action. In both cases, Vuyyuru sued Commonwealth employees. In *Whitley v. Commonwealth*, the Virginia Supreme Court held that employees of the Commonwealth are in privity with the Commonwealth of Virginia for claim preclusion purposes. 260 Va. 482, 538 S.E.2d 296, 301 (Va. 2000). The Court asserted that, because "[t]he Commonwealth acts only through its employees or through its agencies," both of the plaintiff suits addressed functionally identical parties. *Id.* The Court further reasoned that that the Commonwealth's "identity of interest with its employees' actions" dictated that the parties were in privity. *Id.*

This case presents a slightly different situation than the court faced in *Whitley*. In *Whitley*, the court confronted a situation in which the plaintiff sued Commonwealth employees in

one action and the Commonwealth itself in another.  Here, Vuyyuru sued Commonwealth employees in both actions.  That factual distinction makes little difference.  The Commonwealth's "identity of interest with its employees' actions" controls in both actions. *Whitley*, 538 S.E.2d at 301.  The Commonwealth would be responsible for the remedies Vuyyuru would have gained from succeeding in either action.  Therefore, the defendants in both actions are in privity.

Second, Vuyyuru's claims from the 2007 action arose out of the Board's proceedings, which culminated in the revocation of his license.  Here, Vuyyuru once again contests the fairness of the Board proceedings, even though he presents new theories of liability and names new defendants.  Third, Vuyyuru could have raised the allegations he makes here in the 2007 action.  Since that action dealt with the same underlying transaction as does this one, it afforded Vuyyuru an opportunity to lay state- and federal-law claims against any Commonwealth employees relevant to that transaction.  Finally, the 2007 action ended in a final judgment on the merits.  In Virginia, a dismissal based on a bar to recovery, such as a statute of limitations defense, operates with the preclusive effect of a final judgment.  *Lambert v. Javed*, 273 Va. 307, 641 S.E.2d 109, 111 (Va. 2007).  The circuit court sustained pleas of res judicata and collateral estoppel by the defendants and dismissed the action partly on those grounds.

III.  Absolute Immunity

    A.  *Harp and Nebiker are immune from the plaintiffs' claims.*

Defendants William Harp and Robert Nebiker are immune from all of the plaintiffs' claims.  Virginia law shields Harp and Nebiker absolutely from suit on the abuse of process and business conspiracy claims.  *See Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999)

(applying state law on immunity to state-law tort claim).  In Virginia, quasi-judicial immunity extends to a non-judicial public official who performs judicial functions while acting within his jurisdiction and in good faith.  *Andrews v. Ring*, 266 Va. 311, 325, 585 S.E.2d 780, 787-88 (Va. 2003).

According to the United States Supreme Court, in reasoning endorsed by the Virginia Supreme Court, the "functional comparability" of certain executive officials' roles to those of judicial officers require that they be immune from suit.  *Butz v. Economou*, 438 U.S. 478, 511-12 (1978) (citing *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)).  *See Harlow v. Clatterbuck*, 230 Va. 490, 339 S.E.2d 181, 181 (Va. 1986).  As the Court has explained, "judges [and] advocates" require immunity from suit so they may "perform their respective functions without harassment or intimidation."  *Butz*, 438 U.S. at 512.  This requirement extends to participants in agency proceedings, which "share[] enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."  *Id.* at 512-13.  The presence of procedural safeguards—such as the rights of cross-examination, presentation of evidence, and decision on the record—"reduce[s] the need for private damages actions as a means of controlling unconstitutional conduct."  *Id.*  Absolute immunity acts as a complete bar to damages of any sort.  *Goldstein v. Moatz*, 364 F.3d 205, 212 (4th Cir. 2004).

To qualify for quasi-judicial immunity, the Virginia Supreme Court requires a defendant to demonstrate he (1) performed a judicial function, (2) acted within his jurisdiction, and (3) acted in good faith.  *Harlow v. Clatterbuck*, 230 Va. 490, 339 S.E.2d 181, 184 (Va. 1986).  In determining whether a particular official performs a judicial function, Virginia courts consider "whether the procedure in question shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."

*Harlow*, 339 S.E.2d at 184 (citing *Butz*, 438 U.S. at 512-13). An official performs a judicial function if, for example, the official is charged with determining the law and applying it to facts, and the official presides over a hearing in which procedural safeguards protect against deprivations of rights. *Id*. at 185; *Butz*, 438 U.S. at 512. A court considering whether an official qualifies for absolute immunity need not consider whether the plaintiff suffered a constitutional violation; rather, it need only determine whether the defendant's official status merits a finding of absolute immunity. *Goldstein*, 364 F.3d at 212 n.11.

Harp performed a judicial function. The Amended Complaint alleges Harp served as director of the Board. Harp signed the order executing revoking Vuyyuru's medical license. Furthermore, the Board over which Harp presided functioned like a judicial body. Virginia law gives the Board of Medicine, a regulatory board within the DHP, the power to issue licenses to practice medicine and revoke licenses pursuant to a hearing under the VAPA. *See* Va. Code §§ 54.1-2901, -2915, - 2920. The Act provides for an administrative hearing on a doctor's revocation in which the subject of the hearing is represented by counsel and the presiding Board members administer oaths, receive evidence, and dispose of procedural motions. *See* Va. Code § 2.2-4020. Harp, therefore, presided over a body charged with deciding questions of fact, applying the law, and required to provide individuals under investigation with substantial procedural safeguards. The Virginia Court of Appeals held that the Board proceedings did, in fact, observe sound procedural rules in Vuyyuru's case. *Vuyyuru*, 2008 WL 122804, at *2-6.

Nebiker also performed a judicial function. As Director of the DHP, Nebiker's statutory mandate provides for a role that mixes prosecutorial and judicial functions. The DHP director receives complaints against regulated health care professionals, including doctors, and issues subpoenas "for any informal fact finding or formal proceeding within the jurisdiction of . . . any

regulatory board." Va. Code §§ 54.1-2505(6), -2505(18). He is sworn to enforce the statutes and regulations pertaining to the DHP and has authority to investigate violations of those statues and regulations. Va. Code § 54.1-2506(A). For these proceedings, the director may issue summonses to individuals under investigation, and issue subpoenas to witnesses and for documents. *Id.* The director and other DHP personnel may administer oaths for the purpose of receiving complaints, serve and execute warrants, and receive the criminal history of an investigated person. Va. Code § 54.1-2506(B). The Amended Complaint makes it clear Nebiker carried out these duties. According to the Amended Complaint, Nebiker "was directly involved in the investigation, preparation, and filing of complaints against Dr. Vuyyuru with the Virginia Board of Medicine[.]" (Am. Compl. ¶ 15.) He also received from David Fikse, CEO of SRMC, a complaint regarding various *Virginia Times* articles Vuyyuru published.

Harp and Nebiker both acted within their jurisdictions. *See Harlow*, 339 S.E.2d at 186 (concluding Department of Corrections employees acted within their jurisdictions when they determined the length of a juvenile's commitment, as required by statute). As explained above, Virginia law permits the Board to hold hearings, bound by standards of due process, to determine whether to revoke a physician's license. Harp presided over the Board proceedings that culminated in the revocation of Vuyyuru's license, which the Virginia Court of Appeals determined was procedurally sound. As for the DHP, Virginia law permits its directors to issue subpoenas aimed at gathering facts for Board proceedings and investigating complaints to the Board. By asserting that Nebiker "was directly involved in the investigation, preparation, and filing of complaints against Dr. Vuyyuru" with the Board, the Amended Complaint makes it clear Nebiker acted within this jurisdiction. (Am. Compl. ¶ 15.)

Finally, the Amended Complaint fails to allege that Harp or Nebiker acted in bad faith.

*See Harlow*, 339 S.E.2d at 186 (concluding officials were protected by quasi-judicial immunity when the plaintiff failed to allege the officials acted in bad faith). Vuyyuru's description of Harp's and Nebiker's acts as part of a fraud does not suffice as allegations of bad faith. The only mention of Nebiker in the Amended Complaint is his failure to report the Fikse complaint to Vuyyuru; the Amended Complaint does not even claim he was required to do so. As for Harp, the totally unsubstantiated allegation that he was biased because of certain *Virginia Times* articles—which the Amended Complaint does not even allege he knew about—does not suffice as an allegation of bad faith.

Harp and Nebiker are also immune from the plaintiffs' RICO claims. Quasi-judicial immunity prohibits suit against a qualifying officer on federal claims. *See Link v. Cal.*, 395 Fed. App'x 383, at *1 (9th Cir. Sept. 7, 2010). *Cf. Reaves v. Peace*, 1996 WL 679396, at *9 n.6 (E.D. Va. Mar. 21, 1996) (asserting judicial immunity shields judges from civil RICO claims). In deciding whether an official is entitled to quasi-judicial immunity, the Fourth Circuit considers whether the official's duties are functionally comparable to those of a judge, whether the official makes decisions sufficiently controversial that they are likely to foster suits from aggrieved individuals, and whether sufficient procedural safeguards are in place to protect against constitutional deprivations. *See Richter v. Connor*, 21 F.3d 423, 1994 WL 118011, at *3 (4th Cir. Apr. 8, 1994) (unpublished table decision).

The Fourth Circuit has previously concluded that members of the Virginia Board of Medicine are immune from suit, even when the Board members commit procedural errors. *Id.* at *4. As director of the Board, the law of the Fourth Circuit dictates that Harp is immune. Nebiker is also immune from the RICO claims. As the Court has explained, Nebiker's duties were functionally comparable to those of a judge. Furthermore, as Vuyyuru's constant stream of

lawsuits against Nebiker and other members of the Board attests, Nebiker's decisions are likely to foster suits from aggrieved individual. Finally, as the Virginia Court of Appeals found in its review, the Board proceedings in which Nebiker participated as the Director of the DHP provided sufficient procedural safeguards to protect Vuyyuru against constitutional deprivations. Even if Nebiker's failure to disclose Fikse's complaint violated some due process requirement, a quasi-judicial official does not lose his absolute immunity by committing a procedural error.[7] *Id.*

**B.** *Pedrotty, Stanwix, Jagdmann, and McDonnell are entitled to prosecutorial immunity on the plaintiffs' claims.*

Defendants Frank Pedrotty, John Stanwix, Judith Jagdmann, and Robert McDonnell are absolutely immune from the plaintiffs' claims. Those defendants are immune on the plaintiffs' state-law claims, since Virginia law recognizes absolute prosecutorial immunity as derivative of judicial immunity. *Andrews*, 585 S.E.2d at 784-85. *See Imbler*, 424 U.S. at 430-31. The Virginia Supreme Court has never considered whether prosecutorial immunity attaches in administrative proceedings. But neither has that court given any indication that it rejects the rule from *Butz v. Economou*, 438 U.S. at 515-17, conferring immunity on a prosecutor arguing the government's case in an administrative proceeding.[8] Indeed, prosecutorial immunity covers a broader range of conduct under Virginia law than it does under federal law.[9] *Andrews*, 585

---

[7] Whether or not Nebiker's role in Vuyyuru's proceeding was functionally comparable to that of a judge, it appears at least that his role was functionally comparable to that of a prosecutor. Vuyyuru's allegations and the inventory of his statutory duties suggest he was "responsible for the decision to initiate . . . a proceeding subject to agency adjudication," entitling him to immunity. *Butz*, 438 U.S. at 516. Nebiker is immune as a prosecutor whether or not he is immune as a quasi-judicial official.

[8] A Virginia trial court has held that an individual who participates in the prosecution of professional disciplinary proceedings is entitled to absolute prosecutorial immunity. In *Leach v. Va. State Bar*, a Virginia circuit court held a prosecutor immune for presenting the state bar's case in an attorney's disciplinary hearing. *See* 73 Va. Cir. 362, No. CL07-1395, 2007 WL 6013578 (Va. Cir. Ct. June 8, 2007).

[9] In *Burns v. Reed*, the United States Supreme Court held prosecutorial immunity does not extend a prosecutor's act of giving advice to police officers. 500 U.S. 478 (1991). The Virginia Supreme Court has rejected *Burns* and conferred immunity on a local prosecutor who advised a building inspector to file a criminal complaint against school officials. *Andrews*, 585 S.E.2d at 784-85.

S.E.2d at 784-85.  With respect to the plaintiffs' RICO claims, *Butz* also supplies the standard for determining whether Pedrotty, Stanwix, Jadgmann, and McDonnell are absolutely immune. *Butz*, 438 U.S. at 515.  *See Verbeek v. Teller*, 158 F.Supp.2d 267, 280-81 (E.D.N.Y. 2001).

Under *Butz*, an attorney who presents the government's case in an agency proceeding is absolutely immune if (1) his duties are functionally comparable to those of a prosecutor and (2) the agency observed adequate procedural safeguards in the proceeding at issue.  *Butz*, 438 U.S. at 516-17; *Ostrzenski*, 177 F.3d at 249.  Under Virginia law, the Attorney General or one of his assistants must represent every board in conducting civil litigation.  *See* Va. Code § 2.2-507(A). To that end, Pedrotty and Stanwix prosecuted the case against Vuyyuru in front of the Board. The Amended Complaint asserts that Pedrotty, as member of the Virginia Attorney General's office, prosecuted the case against Vuyyuru.  It further states Stanwix assisted Pedrotty in the prosecution and "was involved in the investigation" against Vuyyuru.  (Am. Compl. ¶ 16.) Jadgman and McDonnell allegedly oversaw the prosecution.  For its part, the Virginia Court of Appeals found that members of the Office of the Attorney General prosecuted the case against Vuyyuru in accordance with Virginia law.  *Vuyyuru*, 2008 WL 122804, at *5.  Furthermore, as the statutory requirements the Court has cited demonstrates, and as the Virginia Court of Appeals held, the Board observed adequate procedural safeguards during Vuyyuru's hearing.  *See Vuyyuru*, 2008 WL 122804, at *2-6.  These safeguards gave Vuyyuru "ample opportunity to challenge the legality of the proceeding."  *Butz*, 438 U.S. at 515.  For these reasons, Defendants Pedrotty and Stanwix are absolutely immune.  Defendants Jadgmann and McDonnell are also absolutely immune, since the Amended Complaint alleges they oversaw Vuyyuru's prosecution.

The plaintiffs counter that Pedrotty and Stanwix acted outside the scope of their immunity.  They assert prosecutorial immunity does not prevent them from litigating the

allegations that Pedrotty and Stanwix directed an unconstitutional search of Vuyyuru's office and coached Dr. Damle in testifying against Vuyyuru.

The plaintiffs cite *Buckley v. Fitzsimmons* in support, but that case is unavailing given their allegations. 509 U.S. 259 (1993). *Buckley* held that prosecutors are protected only by qualified immunity for investigative acts, such as determining the source of a footprint at a crime scene. 509 U.S. at 273-74. The Court concluded these acts were not subject to absolute immunity because they were not "within [the prosecutor's] function as an advocate." *Id.* (citing *Imbler*, 424 U.S. at 431 n.32). *Buckley* is no help to the plaintiffs because they allege acts that fall within the *Imbler* and *Butz* zone of absolute immunity. The plaintiffs' allegations against Pedrotty and Stanwix concern their handling of the Board's expert witness, Dr. Damle, during Board proceedings. These allegations deal with acts clearly "within [the prosecutor's] function as an advocate." *Id.* (citing *Imbler*, 424 U.S. at 431 n.32). This conclusion is consistent with this Circuit's precedent. In *Richter v. Connor*, the Fourth Circuit held an attorney who prosecuted a disciplinary case in front of the Board could not be sued "for any involvement in bringing charges against [the hearing subject] or for misconduct that may have occurred during the hearing." *Richter*, 1994 WL 118011, at *6. Vuyyuru's allegations refer to acts Pedrotty and Stanwix carried out in a similar capacity to the prosecutor from *Richter*.

IV. <u>Failure to State a Claim</u>

The Commonwealth and Private Defendants also seek dismissal of the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. Fed R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494

F.3d 458, 464 (4th Cir. 2007).  Thus, in deciding a Rule 12(b)(6) motion, a court must accept all

of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), as

well as provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69,

73 (1984), and view those facts in the light most favorable to the plaintiff, *Christopher v.

Harbury*, 536 U.S. 403, 406 (2002).

Even though a motion to dismiss challenges only the legal sufficiency of a claim, Rule

8(a)(2) requires a plaintiff to allege facts that show that his claim is plausible.  Fed. R. Civ. P.

8(a)(2) (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).  A complaint must

contain factual allegations sufficient to apprise a defendant of "notice of what the . . . claim is

and the grounds upon which it rests."  *Id.* at 555 (citation omitted).  The Court may dismiss a

claim that fails to state facts supporting each element of a claim.  *Iodice v. United States*, 289

F.3d 270, 281 (4th Cir. 2002).  Furthermore, the court need not accept legal conclusions couched

as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable

conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180

(4th Cir. 2000).


A.  *The plaintiffs fail to state a claim against Jadgmann and McDonnell.*

In addition to the Court's determination that Jadgmann and McDonnell are absolutely

immune from the plaintiffs' claims, the Court also concludes the Amended Complaint fails to

state a claim against Jagdmann and McDonnell.  The Amended Complaint solely alleges that the

staff of the Virginia Attorney General prosecuted the case against Vuyyuru and that these two

Attorneys General knew of the case.

The plaintiffs' support their claims against Jagdmann and McDonnell with purely

conclusory allegations. The plaintiffs do not allege any facts showing the two attorneys general personally made decisions regarding Vuyyuru's prosecution. The plaintiffs essentially concede the point. They demur that "[d]iscove[ry] is expected to show the specific involvement of the Attorneys General in these acts and the pattern of retaliation against Dr. Vuyyuru." (Resp. in Opp'n to Commonwealth Defs. 8, Docket No. 58.) This statement demonstrates the deficiency of the claims against Jagdmann and McDonnell. Filing a complaint consisting of conclusory allegations of wrongdoing does not entitle a plaintiff to discover the defendant's acts forming the basis of the complaint. Rather, the plaintiff must come to court armed with "sufficient factual matter" which, "accepted as true," states a plausible claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plaintiffs clearly have not done that. With respect to Jagdmann and McDonnell, the plaintiffs have merely come to the Court with conclusory statements of liability. Hence, the plaintiffs have failed to state a claim against Jagdmann and McDonnell.

B. *The Plaintiffs fail to state an abuse of process claim.*

The plaintiffs allege a state-law claim for abuse of process. Under their theory, Dr. Damle and the Commonwealth Defendants abused process when the former gave allegedly perjured testimony at the Board proceedings, at the behest of the latter. (*See* Pl.'s Resp. in Opp'n to Private Defs.' Mot. to Dismiss 4, Docket No. 68.) In Virginia, stating a claim for abuse of process requires the plaintiff to plead (1) the existence of an ulterior purpose, and (2) an act in the use of process not proper in the regular prosecution of the case. *Donohoe Const. Co., Inc. v. Mount Vernon Associates*, 235 Va. 531, 369 S.E.2d 857, 862 (Va. 1988).

Vuyyuru's claim fails to fulfill two vital prerequisites of an abuse of process claim under Virginia law. A plaintiff must be served with some form of process—such as a summons, writ,

subpoena, or notice of deposition—in order to claim the process was abused. *See Donohoe Const. Co.*, 369 S.E.2d at 862-63; *Mullins v. Sanders*, 189 Va. 624, 54 S.E.2d 116, 121-22 (Va. 1949). An allegation of the service of some form of process on the plaintiff is required to make out a valid claim. The plaintiffs fail to fulfill this requirement in two ways. First, the primary act from which their claim arises is not the service of process, but rather Dr. Damle's testimony. *See 7600 Ltd. Partnership v. QuesTech, Inc.*, 39 Va. Cir. 268, 1996 WL 34384553 at *2 (Va. Cir. Ct. 1996) ("Misrepresentations do not fit within the definition of abuse of process in Virginia.") Secondly, a plaintiff raising an abuse of process claim must allege a defendant served the plaintiff himself with process, or that a defendant filed a document with a court directed at the plaintiff, such as a lien or warrant. *See Donohoe Const. Co.*, 369 S.E.2d at 859-60; *Mullins*, 54 S.E.2d at 627. Under the plaintiffs' proposed theory of liability, the plaintiffs fail to allege that the defendants served one of the plaintiffs with process or filed a court document directed at one of them.

Additionally, the plaintiffs' abuse of process claim fails because it lacks support of specific fact allegations sufficient to give the defendants "notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. *See* Fed. R. Civ. P. 8(a)(2); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002). The plaintiffs contend the Attorney General's Office aimed to retaliate against Vuyyuru because the Office was subject to federal investigation. This allegation does not establish that the Attorney General's Office harbored an improper motive, since the Amended Complaint fails to make any specific, non-conclusory allegations tending to show that a retaliatory intent motivated the Office's involvement in Vuyyuru's proceedings in front of the Board. The Amended Complaint does not even attempt to allege Dr. Damle harbored an improper motive against Vuyyuru. For all of these reasons, the plaintiffs'

abuse of process claim fails.

C. *The plaintiffs fail to state a business conspiracy claim.*

The plaintiffs fail to state a claim under Virginia Code § 18.2-499, as their asserted conspiracy theories are too vague and generalized. Virginia Code § 18.2-499 prohibits two or more individuals from conspiring for the purpose of "willfully injuring another in his reputation, trade, business, or profession by any means whatever[.]" *See* Va. Code § 18.2-500 (permitting civil enforcement of § 18.2-499). In order to state a claim for business conspiracy, a plaintiff must plead (1) concerted action, (2) legal malice, and (3) causally related injury. *Schlegel v. Bank of Am., N.A.*, 505 F.Supp.2d 321, 325 (W.D. Va. 2007).

In order to plead that conspirators acted in concert, the plaintiff must allege the defendants "combined together to effect a preconceived plan and unity of design and purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F.Supp.2d 483, 499 (E.D. Va. 2003) (citation omitted). A plaintiff must make this allegation with specificity, and may not rely only on generalized contentions. *Id. See* Fed. R. Civ. P. 9(b); *Field v. GMAC LLC*, 660 F.Supp.2d 679, 689 (E.D. Va. 2008) (requiring a § 18.2-499 claimant to state in detail the identities and the roles of the conspirators, their methods in carrying out the conspiracy, and that the conspirators acted in concert). "Legal malice" requires a plaintiff to allege "that the defendant acted intentionally, purposefully, and without lawful justification" to the plaintiff's injury. *Simmons v. Miller*, 261 Va. 561, 544 S.E.2d 666, 677 (2001). The plaintiff must allege that one of the purposes of the conspiracy was in injuring the plaintiff's reputation, trade, or business. *Id.* at 676-77.

The plaintiffs plead three separate conspiracies. First, they claim SRMC officials and

SRMC CEO David Fikse "brought pretextual complaints" to the Board against Vuyyuru in retaliation against him, and then met with Board staff "to persuade the Board's staff to continue to prosecute the pretextual complaints[.]" (Am. Compl. ¶ 91.) According to the plaintiffs, SRMC officials began initiating personnel actions and filing Board complaints against Vuyyuru as early as 1998. On or around February 24, 2005, Fikse complained to the Board regarding articles Vuyyuru published in the *Virginia Times*, suggesting that Vuyyuru's acts in publishing these articles constituted unprofessional conduct under Virginia law. The plaintiffs call this complaint "pretextual," reflecting a concern about the fraud Vuyyuru attempted to expose. (Am. Compl. ¶ 91.) Then, according to the plaintiffs, Fikse and the other SRMC defendants met with Board staff members to persuade them to continue to prosecute the "pretextual complaints," in order to cover up SRMC's alleged wrongdoing. (Am. Compl. ¶ 91.)

§ 18.2-499's heightened pleading requirements demand more than the plaintiffs provide the Court here. The plaintiffs recite all the elements of a § 18.2-499 claim in a cursory way, by alleging the SRMC defendants urged the Board to act against Vuyyuru and did so with a purpose to injure Vuyyuru's business. But the plaintiffs do not explain how, where, or when Fikse and the SRMC defendants—Jadhav, SRMC, CHSPS, Dave, and Saraiya—carried out their meeting with the Board. They do not state with specificity the types of personnel actions the SRMC Defendants took. And they fail to convincingly explain how the actions of the SRMC Defendants, and particularly how Fikse's action in filing the complaint, were motivated by legal malice. The Amended Complaint is totally devoid of any discussion of the defendants' individual roles in exciting the Board to action.

According to the second conspiracy theory, JRMC officials initiated personnel actions and filed Board complaints against Vuyyuru, as early as 1998. JRMC officials and JRMC Vice

President Linda Ault brought their own "pretextual complaints" to the Board and "were instrumental in causing Dr. Vuyyuru to be falsely blamed" for the death and injuries of several patients. (Am. Compl. ¶ 93.) Ault and JRMC allegedly "caused an incomplete set of medical records regarding [two patients] to be delivered" to the Board for its review of Vuyyuru's case. (Am. Compl. ¶ 93.) This theory is defective, for similar reasons the Court gave for rejecting the first conspiracy theory. The plaintiffs fail to explain how, where, or when JRMC officials caused him to be falsely blamed. They fail to specify the records the defendants failed to deliver. They fail to detail the defendants' individual roles in carrying out the conspiracy.

The plaintiffs' third theory of liability asserts that the Board staff conspired to prosecute the Board's case against Vuyyuru. They allege the Board dismissed several charges against Vuyyuru before prosecuting him. Somehow, this failure to prosecute some charges "reflects pretext, that defendants were searching for any charge to bring against whistleblower Vuyyuru that they could find[.]" (Am. Compl. ¶ 101.) The plaintiffs imply that the Board treated Vuyyuru's case in this way because it knew the Virginia Attorney General's Office was the subject of some unspecified federal investigation. The plaintiffs support this theory without a single specific factual contention, other than the dismissal. That the Board actually softened its treatment towards Vuyyuru is not a convincing allegation of legal malice. Here, the plaintiffs cannot even be credited with the somewhat specific contention that Pedrotty coached Damle's testimony. Pedrotty was an employee of the Attorney General's Office, but this theory alleges the Board conspired against Vuyyuru. Hence, this conspiracy theory fails, as do the plaintiffs' two other theories.

D. *The plaintiffs fail to state a RICO claim.*

The plaintiffs allege that both JRMC and its employees, and SRMC and its employees, were enterprises aided and abetted by the Attorney General's office and the Board in perpetrating racketeering acts. They also allege JRMC, SRMC, and the Private Defendants, aided and abetted by the Commonwealth Defendants, together constituted a "single super enterprise" that retaliated against Vuyyuru for reporting fraud and malpractice. (Am. Compl. ¶¶ 110, 115.) The defendants' racketeering acts include retaliating against Vuyyuru for complaining about malpractice and fraud at JRMC and SRMC and committing acts of malpractice and Medicare fraud. *See* 18 U.S.C. §§ 1341, 1343, 1512, and 1513. As a result of these acts, the plaintiffs contend the Private Defendants violated 28 U.S.C. §§ 1962(a), (b), (c), and (d), by receiving income, acquiring an enterprise, associating with an enterprise, and conspiring to do each of these, through a pattern of racketeering activity. The Court concludes the plaintiffs have failed to state a RICO claim.

### 1. The plaintiffs lack standing to raise a § 1962(a) claim.

The plaintiffs lack standing to assert a claim under § 1962(a). 18 U.S.C. § 1962(a) makes it illegal for a person to use income to establish or operate an enterprise engaged in interstate commerce when the person has gained that income through a pattern of racketeering activity. In order to make out a claim under § 1962(a), a plaintiff must allege a defendant or some defendants derived income from a pattern of racketeering activity. *Foster v. Wintergreen Real Estate Co.*, 363 Fed. App'x 269, 275 n.6 (4th Cir. Jan. 29, 2010) (citing *United States v. Vogt*, 910 F.2d 1184, 1194 (4th Cir. 1990)).

The plaintiffs allege the defendants engaged in fraudulent billing practices and used the proceeds of the fraud to engage in further racketeering activities. This claim under § 1962(a)

runs into trouble for at least two reasons. First, it is too vague to get past the pleading stage. The plaintiffs do not specify the defendants to whom they refer. Nor do they specify the enterprises to which they refer. Therefore, this theory lacks specific factual allegations necessary required to show a plausible claim. *Twombly*, 550 U.S. at 556 n.3. Second, the plaintiffs fail to allege they were injured by the purported fraud. RICO only permits civil recovery for any party "injured in his business or property by reason of a violation" of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). *See Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995). The plaintiffs do not allege that the billing practices injured them in any way.

### 2. The plaintiffs' § 1962(b) claim fails.

The plaintiffs' § 1962(b) claim is deficient. § 1962(b) prohibits any person from acquiring or maintaining control of an enterprise engaged in interstate commerce through a pattern of racketeering activity. In order to prevail on a claim under § 1962(b), a plaintiff must allege a defendant acquired an interest in or control of an enterprise. *In re XE Services Alien Tort Litigation*, 665 F.Supp.2d 569, 596 (E.D. Va. 2009). Vuyyuru alleges unspecified defendants "used witness retaliati[o]n to gain and maintain control of their enterprises which otherwise would have been exposed and shut[]down as a result of Dr. Vuyyuru's whistleblowing." (Am. Compl. ¶ 127.) Similar to their claim under § 1962(a), the plaintiffs do not specify the defendants to whom they refer and do not specify the enterprises to which they refer. Therefore, the plaintiffs fail to state a claim under § 1962(b).

### 3. The plaintiffs fail to plead a RICO enterprise.

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4) (2006). The plaintiffs attempt to plead five enterprises. First,

SRMC and, second, JRMC, constitute enterprises. Third, SRMC, CHSPS, Jadhav, Dave, Saraiya, and Fikse constitute an associated-in-fact enterprise. Fourth, JRMC, Jadhav, Dave, Saraiya, and Ault constitute an associated-in-fact enterprise. Fifth, JRMC, SRMC, and the Private Defendants, aided and abetted by the Commonwealth Defendants, together constituted a "single super enterprise" set on retaliating against Vuyyuru for reporting fraud and malpractice. (Am. Compl. ¶ 115.)

The plaintiffs' institutional enterprises fail. The plaintiffs allege JRMC and SRMC were enterprises. Under these theories, the Amended Complaint is unclear about who the "person[s]" are who used those enterprises to carry out patterns of racketeering activity. *See* 18 U.S.C. § 1962(c). For this reason, the Amended Complaint fails to state a RICO claim in which JRMC or SRMC functions as the enterprise.

These theories fail even if the Court reads the Amended Complaint to assert that the "JRMC defendants"—Jadhav, JRMC, Ault, Dave, and Saraiya—and the "SRMC defendants"— Jadhav, SRMC, CHSPS, Fikse, Dave, and Saraiya—were the "persons" who used JRMC and SRMC, respectively, to carry out patterns of racketeering activity. In order to state a claim under § 1962(c), a plaintiff must allege a "person employed or associated with" a RICO enterprise distinct from the RICO enterprise itself. § 1962(c); *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). As a Court in this district has explained, a plaintiff does not satisfy this distinctness requirement when he alleges a RICO enterprise consisting of "a corporate defendant associated with its own employees carrying on the regular affairs" of the corporate defendant. *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elec. Co., Ltd.*, 4 F.Supp.2d 473, 477 (E.D. Va. 1998) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 20 F.3d 339, 344 (2d Cir. 1994)).

The plaintiffs' theories present the reverse situation than the one presented in *Semiconductor Energy Laboratories*. Instead of alleging a corporate "person" who associates with an enterprise consisting of the corporate defendant and its employees, the plaintiffs allege JRMC and SRMC were among the many "person[s] employed or associated with" the enterprises JRMC and SRMC. Nonetheless, the principle underlying the distinctiveness requirement requires these enterprise theories should fail. By alleging the JRMC and SRMC defendants were among the "person[s]" associated with the enterprises JRMC and SRMC, the plaintiffs in essence assert "that a defendant could conspire with his right arm, which held, aimed and fired the fatal weapon." *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982), *overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990).

The plaintiffs also allege three associated-in-fact enterprises. Pleading an associated-in-fact enterprise requires a plaintiff to demonstrate "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 129 S.Ct. 2237, 2244 (2009). A plaintiff properly pleads an enterprise when he alleges "a continuing unit that functions with a common purpose," regardless of how decisions in the enterprise are made, the roles of the members, or how the enterprise operates. *Id.* at 2245. *See United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994). As a Third Circuit panel has recently explained regarding associated-in-fact enterprises, "simply identifying the allegedly associated components does not serve to put defendants on notice of the RICO claim alleged against them[.]" *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 369 (3d Cir. 2010).

The plaintiffs' three proposed associated-in-fact enterprises fail. With respect to the

enterprise involving SRMC, CHSPS, Jadhav, Dave, Saraiya, and Fikse, the Amended Complaint fails to allege relationships between the members of this enterprise. *See Boyle*, 129 S.Ct. at 2244. Within this enterprise, Jadhav and Dave apparently threatened Vuyyuru because he reported acts of fraud and malpractice against them. At some other time, Fikse reported Vuyyuru to the Board for publishing certain articles in the *Virginia Times*. And at some other time, SRMC officials—which ones, the Amended Complaint does not say—apparently met with Board officials and urged them to take action against Vuyyuru. The plaintiffs posit absolutely no connection between these events and provide no account of the relationship between these individuals.

Furthermore, the Amended Complaint fails to assert a common purpose to this enterprise. According to the plaintiffs, this enterprise set out to cause the Board to revoke Vuyyuru's license in retaliation for his whistleblowing. This claim lacks support in the Amended Complaint. The vagueness of the allegations against Jadhav and Dave, and of the meeting between SRMC and Board officials, makes it impossible to ascertain whether these defendants acted with a common purpose. And while Vuyyuru does provide the Court the letter Fikse wrote to the Board, on its face the letter does not support the conclusion that Fikse aimed to discredit Vuyyuru because of the purported damage Vuyyuru's whistleblowing wrought upon SRMC. The letter alone does not show that the defendants in this proposed enterprise, or even Fikse alone, acted with the purpose of retaliating against Vuyyuru.

The plaintiffs' second associated-in-fact enterprise, involving JRMC, Jadhav, Dave, Saraiya, and Ault, fails for similar reasons. Again, the Amended Complaint fails to assert relationships between the members of this alleged enterprise. *See Boyle*, 129 S.Ct. at 2244. Within this enterprise, Jadhav and Dave apparently threatened Vuyyuru because he reported acts

of fraud and malpractice against them. At some other time, Dr. Saraiya and Ault banded together to decrease Vuyyuru's access to the hospitals, though the plaintiffs do not explain how they achieved this goal. JRMC officials apparently participated in the meeting with Board staff members, in which the hospital officials urged the Board to take disciplinary measures against Vuyyuru. The plaintiffs posit no connection between these events and provide no account of the relationship between these individuals.

Furthermore, the Amended Complaint fails to allege a common purpose to this enterprise. According to the plaintiffs, this enterprise set out, with the aid of the Attorney General's office and the Board, obtain the revocation of Vuyyuru's license in retaliation for his whistleblowing. While the Amended Complaint alleges JRMC officials urged the Board to act against Vuyyuru, it does not make any allegation that the parties met with the purpose of retaliating against Vuyyuru.

Finally, the plaintiffs' fail in alleging a "single super enterprise" involving JRMC, SRMC, and the Private Defendants, aided and abetted by the Commonwealth Defendants. (Am. Compl. ¶ 115.) The Amended Complaint alleges two interactions between the Private and Commonwealth Defendants: SRMC and JRMC officials allegedly urged the Board to act against Vuyyuru during the Board revocation proceedings, and they later met with the Board to discuss suing Vuyyuru for defamation. These allegations do not demonstrate "a continuing unit that functions with a common purpose," nor a group that undertakes "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Boyle*, 129 S.Ct. at 2245; *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (citation omitted).

4. <u>The plaintiffs fail to plead at least two predicate acts of racketeering.</u>

The plaintiffs' RICO claims require them to allege the defendants engaged in a "pattern of racketeering activity." 28 U.S.C. § 1962. In order to plead a "pattern of racketeering activity," the plaintiffs must allege at least two acts of racketeering, at least one of which occurred less than ten years after a prior act of racketeering. 28 U.S.C. § 1961(5). In order for an illegal act to constitute a racketeering act for RICO purposes, the plaintiff must plead all the elements of the underlying offense and plead facts demonstrating that the defendant could be convicted of that offense. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 486-88 (1985); *D'Addario v. Geller*, 264 F.Supp.2d 367, 397 (E.D. Va. 2003).

As predicate acts, the plaintiffs assert the defendants intimidated witnesses, in violation of 18 U.S.C. §§ 1512 and 1513, and committed mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. The pleading under each of these statutes is deficient.

First, the plaintiffs allege the defendants violated 18 U.S.C. § 1512, which makes unlawful the intimidation or harassment of a person testifying in an official, federal proceeding. The plaintiffs seem to allege a violation of § 1512(a)(2)(C), which prohibits the use or threat of physical force with intent to hinder the communication of information relating to a federal offense to a federal officer. In order to allege a violation of § 1512(a)(2)(C), the plaintiffs must allege that the defendants intended their actions to impede such a communication. *United States v. Harris*, 498 F.3d 278, 286 (4th Cir. 2007).

Second, the plaintiffs allege the defendants violated 18 U.S.C. § 1513. The plaintiffs seem to contend the defendants violated § 1513(b)(1), which prohibits knowing threats of bodily injury with intent to retaliate against any person for attending an official proceeding as a witness. § 1513(e) prohibits knowing harmful acts, "including interference with the lawful employment

or livelihood of any person," with intent to retaliate for reporting information relating to the commission of a federal offense. The elements of a § 1513 violation are (1) knowing engagement in conduct (2) causing or threatening to cause injury or interfere with a person's livelihood (3) with intent to retaliate for attending an official proceeding or reporting information regarding a federal crime. *United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993).

The plaintiffs contend all named defendants retaliated against Vuyyuru because he "expos[ed] the lucrative fraud" of SRMC and JRMC defendants. (Am. Comp. ¶ 111.) The plaintiffs allege superficially that Saraiya took "actions" aimed at reducing Vuyyuru's privileges at JRMC and SRMC and that Ault "caused [Vuyyuru] to be blamed" for a patient's death. (Am. Compl. ¶¶ 37-38.) The plaintiffs also claim JRMC and SRMC officials halted advertising to the *Virginia Times*, but, again, they fail to explain how the defendants did so. These allegations are insufficiently specific. The §§ 1512 and 1513 allegations fail to state claims, because the plaintiffs' allegations fail to (1) provide any specific factual basis for believing that Defendants Ault and Saraiya acted in retaliation against Vuyyuru, and, if they did, how they did so; (2) provide any specific factual basis for believing that JRMC and SRMC officials interfered with *Virginia Times* advertisers; or (3) persuade the Court that a few comments made up of unverifiable hearsay rose to the level of intimidation, threats, or corrupt persuasion aimed at preventing Vuyyuru from engaging in his purported whistleblowing activities.[10]

Third, the plaintiffs allege the defendants committed mail and wire fraud by mailing and transmitting the documentation required to carry out their purported acts of fraud. Proving mail

---

[10] To the extent the plaintiffs allege that the entire Board proceeding was the culmination of a plan to retaliate against Vuyyuru, the Amended Complaint lacks specific allegations of the defendants' intent to retaliate against him and of the nexus between that intent and the Board proceedings. If instead the plaintiffs' claims under §§ 1512 and 1513 concern the conduct of Pedrotty, Stanwix, and other members of the Board's and Attorney General's staff during the Board proceedings, then those claims fail as well. §§ 1512 and 1513 require tampering with a witness in a federal proceeding, which the Board proceeding was not. *See* 18 U.S.C. § 1515(a)(1).

and wire fraud requires a plaintiff to plead (1) a scheme disclosing an intent to defraud, and (2) the use of the mails or interstate wires in furtherance of the scheme. *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 233 (4th Cir. 2004). Acts of fraud pled as the basis of a RICO claim are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). Rule 9(b) requires a plaintiff to plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). With respect to mail and wire fraud as predicate acts under RICO, the plaintiff must describe the time, place, and content of mail and wire communications, along with the parties to the communications. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

The plaintiffs make several generalized allegations that SRMC and JRMC officials inflated bills, committed malpractice, and performed unnecessary procedures. These allegations are insufficient under Rule 9(b). Absent from the Amended Complaint, for example, are the names of the officials who engaged in fraudulent activity, the patients subject to fraud or malpractice, and the amount of money by which the officials inflated bills. More problematic is the fact that the Amended Complaint does not state which Private Defendants committed the alleged acts of fraud. The plaintiffs merely state—in a passage typical of other statements in the Amended Complaint—that Vuyyuru complained of "malpractice and [M]edicare, Medicaid, and insurance fraud," along with "defendants' misconduct and potential violations of federal and state laws[.]" (Am. Compl. ¶ 29.) These allegations fall well short of the particularity required by Rule 9(b).

5. <u>The plaintiffs fail to plead a pattern of racketeering activity</u>

Because the plaintiffs fail to plead any racketeering acts, their alleged pattern of racketeering activity fails. However, the alleged pattern has other defects as well. The Fourth Circuit considers the question of whether a plaintiff has alleged a pattern of racketeering activity "a commonsensical, fact-specific inquiry." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002). A RICO pattern of racketeering activity requires the plaintiff must show that the racketeering acts are "related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (enunciating the "continuity plus relationship" test). Predicate acts form a continuous pattern if they constitute either "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (describing continuity as "both a closed- and open-ended concept"). Pleading a relationship between predicate acts requires alleging "the same or similar purposes, results, participants, victims, or methods of commission" of the acts. *H.J. Inc.*, 492 U.S. at 240.

The primary pattern of racketeering activity the plaintiffs appear to allege is retaliation against him for reporting various federal crimes. That pattern began with the intimidation and mistreatment Vuyyuru allegedly suffered from various Private Defendants in 1998, and culminated in the revocation of his medical license in 2005. Since the alleged pattern has a "built-in ending point" that "does not present the necessary threat of long-term, continued criminal activity," the alleged pattern of racketeering activity cannot form an open-ended continuous pattern. *GE Inv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001).

The plaintiffs also fail to plead a pattern with "closed-ended" continuity. If the plaintiffs' claims under 18 U.S.C. §§ 1512 and 1513 refer to the Board proceedings against Vuyyuru, the

36

predicate acts that Vuyyuru alleges form a pattern took place over two years between 2004 and 2006. These acts cannot form a pattern of racketeering activity when they were carried out over just a two-year span. *See GE Investment Private Placement Partners*, 247 F.3d at 550-51 (concluding that a fraud scheme lasting two years was insufficient to establish a closed-end pattern of racketeering activity).

If, instead, the §§ 1512 and 1513 claims refer to the Private Defendants' acts of intimidation, then the "relationship" element of the plaintiffs' alleged pattern is too weak. In stretching his proposed pattern back to 1998—when hospital officials allegedly began retaliating against Vuyyuru for his "whistleblowing activities"—the plaintiffs reduce the strength of the relationship between the defendants' various predicate acts. In order to allege a coherent RICO pattern of racketeering activity, the plaintiffs would have to demonstrate a relationship between the hospital officials' intimidation and the Board proceedings. The mere allegation that hospital officials urged the Board into action is insufficient to link the two episodes into a pattern of racketeering activity. Apart from simply being too vague, that allegation does not signal a series of "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being," to which application of RICO is reserved. *Al-Abood ex rel. Al-Abood*, 217 F.3d at 238 (citation omitted).

V.  The Defendants' Motions for Sanctions

A. *The Court grants the defendants' request for attorneys' fees.*

Both the Private and Commonwealth Defendants request Rule 11 sanctions against Plaintiff Lokesh Vuyyuru and Steven Dennison Smith, counsel for Vuyyuru responsible for filing the plaintiffs' frivolous claims. The Court will do so, since a reasonable inquiry by

counsel would have clearly demonstrated that the plaintiffs' claims were badly defective in numerous respects.[11]

Federal Rule of Civil Procedure 11 requires that a lawyer who files a pleading before a court certifies, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that he does not file the pleading for any improper purpose, the pleading's legal contentions are "warranted by existing law," and the fact allegations are supported in evidence. Fed. R. Civ. P. 11(b). A legal contention is unsupported in law when, after "applying a standard of objective reasonableness," "a reasonable attorney in like circumstances could not have believed his actions to be legally justified," such that the argument has "absolutely no chance of success under the existing precedent." *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987). A fact allegation lacks evidentiary support when it is "unsupported by *any* information obtained prior to filing." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). A reasonable prefiling factual investigation "must uncover some information to support the allegations in the complaint." *Id.* An attorney may not rely on his client's recitation of the facts underlying a claim, but must instead make his own investigation of the pertinent facts. *Segen v. Buchanan Gen. Hosp., Inc.*, 552 F.Supp.2d 579, 585 (W.D. Va. 2007).

All of the plaintiffs' claims are too vague to have any chance of success. While some of the plaintiffs' factual allegations appear "unsupported by *any* information obtained prior to filing," *Brubaker*, 943 F.2d at 1373, and some of his claims contain obvious defects making

---

[11] Before moving for sanctions, the moving party must notify the offending party and offer 21 days for the party to withdraw or correct the sanction-worthy argument or assertion. Fed. R. Civ. P. 11(c)(2). The Commonwealth Defendants notified the plaintiffs' attorney of their intent to file a Rule 11 motion on August 20, 2010, and attached the Rule 11 motion they planned to file. While the plaintiffs filed an Amended Complaint on September 13, 2010, the Amended Complaint failed to correct many of the errors raised in the attached Rule 11 motion. Hence, the Commonwealth Defendants satisfied Rule 11's safe harbor requirement, and the Court may rule on the defendants' motions.

them unwarranted by existing law, it is the plaintiffs' habit of jumping from vague, conclusory fact allegation to legal conclusion that is the most common defect running throughout the Amended Complaint. In this way, the claims have "absolutely no chance of success under the existing precedent." *Cleveland Demolition Co.*, 827 F.2d at 988. Typically, raising vague allegations will not warrant sanctions. However, this case presents a unique circumstance. This case is the latest in a long line of actions challenging the Board's revocation of Vuyyuru's medical license. When he filed this action, his grievances flowing from the revocation had received hearing after hearing up and down the chain of federal and state courts in the state of Virginia. None of the claims he raised in previous cases succeeded. Given Vuyyuru's litigation history, any attorney undertaking a reasonable inquiry would have concluded these claims had absolutely no chance of success on the merits. Furthermore, the Amended Complaint contains not just a vague allegation or two but numerous ones, casting doubt on whether counsel undertook a reasonable inquiry to determine whether the plaintiffs' claims were warranted under existing law.

The Court will now detail the ways in which plaintiffs' the legal contentions had "absolutely no chance of success under the existing precedent" and in which their underlying factual contentions were "unsupported by *any* information obtained prior to filing." *Cleveland Demolition Co.*, 827 F.2d at 988; *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). The claims the plaintiffs raised against Jagdmann and McDonnell were certain to fail. The Amended Complaint mentions each of them only once, stating that they knew of the investigation against Vuyyuru and knew that their staffs presented the Board's case against Vuyyuru. The defendants point out that the plaintiffs do not allege any facts showing either Attorney General personally made any decisions supporting the other Commonwealth

Defendants' actions. The plaintiffs essentially concede the point. They demur that "[d]iscove[ry] is expected to show the specific involvement of the Attorneys General in these acts and the pattern of retaliation against Dr. Vuyyuru." (Resp. in Opp'n to Commonwealth Defs. Mot. to Dismiss 8.) Therefore, the plaintiffs' admitted their allegations against McDonnell and Jagdmann were "unsupported by *any* information obtained prior to filing." *Brubaker*, 943 F.2d at 1373.

The plaintiffs' abuse of process claim suffers from several defects easily discovered with a reasonable inquiry into the relevant law. In Virginia, an allegation of the service of some form of process on the plaintiff himself is required to make out a claim for abuse of process. *See Donohoe Const. Co.*, 369 S.E.2d at 862-63. Nowhere do the plaintiffs allege that any defendant served process on Vuyyuru, VGA, or the *Virginia Times*, or filed a document in court directed at one of them. The Amended Complaint makes Defendant Damle's testimony, rather than the service of a paper on a defendant, the basis of the claim. An investigation of the relatively small universe of Virginia case law on abuse of process would have disclosed the significance of these defects.

The plaintiffs also failed to properly allege that any defendants harbored an improper motive, as Virginia law requires for an abuse of process claim. The plaintiffs contend the Attorney General's Office aimed to retaliate against Vuyyuru because Vuyyuru contributed to a federal investigation to which the Office was allegedly subject. This allegation does not establish that the Attorney General's Office harbored an improper motive, since the Amended Complaint fails to make any specific, non-conclusory allegations tending to show that the Office of the Attorney General was under investigation and that a retaliatory intent motivated its representation of the Board in Vuyyuru's proceeding. Furthermore, Amended Complaint does

not even attempt to allege Dr. Damle harbored an improper motive against Vuyyuru.

Turning to the plaintiffs' business conspiracy theories, the allegations underlying this claim are so vague that, "applying a standard of objective reasonableness," "a reasonable attorney in like circumstances could not have believed his actions to be legally justified" in asserting it. *Hunter*, 281 F.3d at 153. The plaintiffs' conspiracy allegations rely entirely on generalized assertions that certain individuals conspired against Vuyyuru. *See Bay Tobacco*, 261 F.Supp.2d at 499. The sole allegation of wrongdoing underlying his first theory of liability is that Fikse's complaint to the Board regarding certain *Virginia Times* articles represented an attempt to convince the Board to prosecute Vuyyuru in retaliation. Even if the plaintiffs could prove the motive they ascribe to Fikse—a proposition that the Amended Complaint gives the Court no reason to believe—that would not come close to proving other defendants connected to SRMC conspired to harm the plaintiffs.

Similarly, the most specific allegation in the plaintiffs' second conspiracy theory is that Ault and other defendants connected to JRMC sent the Board an incomplete set of medical records for review in Vuyyuru's case. The plaintiffs do not identify the records the defendants should have sent, what records they did send, the result of that failure, and how legal malice motivated the decision. The plaintiffs also fail to explain how the complaints JRMC officials brought against him were pretextual, how JRMC officials caused him to be falsely blamed for several patients' deaths and injuries, and how each defendant contributed to the conspiracy.

The plaintiffs' final theory of liability for business conspiracy is the most clearly defective. There, they allege the Board's decision to dismiss certain charges against Vuyyuru reflected that the Board conspired against him in retaliation for reporting fraud and malpractice allegations. The logic underlying that allegation is unusual. The Court and the defendants need

more explanation than the plaintiffs provide as to why this softened treatment demonstrated a conspiracy aimed at injuring Vuyyuru in his business. The extreme vagueness of the plaintiffs' pleading is particularly unacceptable given that federal courts hold plaintiffs making claims under Virginia Code § 18.2-499 to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). A reasonable attorney would not believe he was justified in filing these conspiracy claims.

Finally, the plaintiffs' RICO claims had no chance of success. RICO is "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). Therefore, a litigant ought to handle the statute with greater care than the plaintiffs have. Numerous courts in this circuit and elsewhere have made this point clear. The plaintiffs have essentially admitted the deficiency of their RICO claims. In their response to the Private Defendants' motion to dismiss, the plaintiffs tersely assert the Amended Complaint states RICO claims. They then acknowledge "that the fact pattern is complex and that more detail could be added to clarify, for example, which defendants engaged in which predicate acts," and they request "the opportunity to file a clarifying amendment to the [Amended Complaint] to address these concerns[.]" (Resp. in Opp'n to Private Defs. 9-10.)

It should come as no surprise, then, that each of the plaintiffs' RICO claims had no chance of success. Their § 1962(a) claim asserted that several defendants violated federal law by fraudulently billing Medicare and Medicaid. A plain reading of 18 U.S.C. § 1964(c), which permits civil RICO recovery for any party "injured in his business or property by reason of a violation," discloses that Vuyyuru cannot recover under RICO for an injury to the federal government. Additionally, their claim under § 1962(a) is too vague: the Amended Complaint

does not specify which defendants acquired an interest in which enterprise. As for the plaintiffs' claim under § 1962(b), they were required to allege that a defendant acquired an interest in or control of an enterprise. *In re XE Services Alien Tort Litigation*, 665 F.Supp.2d at 596. Their bald assertion that unspecified defendants retaliated against witnesses to maintain control of their unspecified enterprises fails to satisfy this requirement.

The Court has explained that the plaintiffs' claims under § 1962(c) and § 1962(d) fail in several ways. These defects are sufficiently glaring and severe to ensure that they lacked any chance of success. While it is not absolutely certain the plaintiffs' institutional enterprises lacked any chance of success, his associated-in-fact enterprises certainly had none. In alleging his three associated-in-fact enterprises, the plaintiffs fail to disclose any relationship between the enterprises' members and fail to demonstrate their purposes with anything more than unsupported generalizations. Furthermore, as the Court has explained, the plaintiffs fail to plead a single predicate act with particularity and in satisfaction of each statute's requirements, such that their alleged pattern of racketeering activity lacked any chance of success.

B. *The Court deems it appropriate to impose a prefiling injunction on Vuyyuru.*

The Commonwealth and Private Defendants also ask the Court to enjoin Vuyyuru from filing any additional federal actions related to the revocation of his medical license without the Court's permission. The Commonwealth and Private Defendants contend that monetary sanctions are unlikely to deter Vuyyuru from further pursuing legal action related to his license revocation. The Court agrees and deems it appropriate to enjoin Vuyyuru from filing any further lawsuit alleging an injury resulting from the Virginia Board of Medicine's May 19, 2006, order revoking Vuyyuru's license without this Court's permission. The Court will order Vuyyuru to

show cause as why the Court should not issue an injunction under those terms.

The Fourth Circuit has cautioned against limiting a litigant's access to the courts absent "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (citing *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). Before handing down a prefiling injunction, the Fourth Circuit instructs courts to

> weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818. After considering all these factors, a court "must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue," or else it will not survive appellate review. *Id. See Thomas v. Fulton*, 260 Fed. App'x 594, 596 (4th Cir. 2008). Before a court issues a prefiling injunction, it must permit the party notice and opportunity to be heard in opposition to the injunction. *Cromer*, 390 F.3d at 819.

Vuyyuru undoubtedly has a history of filing "vexatious" and "duplicative" lawsuits. *Cromer*, 390 F.3d at 818. Excluding Vuyyuru's revocation hearing, which Vuyyuru appealed to the Virginia Supreme Court, Vuyyuru has filed five lawsuits alleging several injuries resulting from the revocation proceedings. Furthermore, Vuyyuru's lawsuits have seriously burdened local courts. In his 2008 lawsuit in this district, for example, the court was forced to wade through a rambling thirty-eight page complaint that asserted several claims totally foreign to state or federal law. *See Vuyyuru v. Va. Bd. of Medicine, et al.*, No. 3:08-CV-301 (E.D. Va. Oct. 31, 2008). The next year, Vuyyuru sued thirty-eight defendants in this district, only to withdraw the complaint as soon as he obtained licensed counsel. *See Vuyyuru v. Jadhav, et al.*, No. 3:09-CV-149 (E.D. Va. Mar. 16, 2009). In this case, it has taken a good deal of the Court's time and

energy to wade through a lengthy and vague complaint alleging claims that, even omitting procedural defenses, no reasonable attorney would expect to survive a motion to dismiss.

The Court cannot believe Vuyyuru filed this action with a good faith belief in its possible success. The Court remains agnostic on the question of whether Vuyyuru has proceeded here out of an intent to harass these defendants or to cause the Court unnecessary delay. Neither Vuyyuru nor his attorney has conducted himself in an untoward way in pursuing the claims here. The Court is open to the conclusion that Vuyyuru subjectively believes himself wronged and deserving of legally-cognizable relief. That said, surely Vuyyuru knows by now that no court can agree that he has suffered any injury it can redress. Several courts in the Virginia state system have concluded that the Board's proceedings were substantively and procedurally sound. The Court cannot believe Vuyyuru and his attorney did not know this Court or any other federal court will not upset those conclusions. Having had every challenge to his revocation in the state or federal system rebutted, Vuyyuru's quixotic trek through the courts of this state has become an exercise in bad faith. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte*, 141 F.3d 1434, 1448 (11th Cir. 1998) ("Improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings.") (citation omitted). Two courts have now concluded Vuyyuru's claims of injury flowing from his license revocation are barred by res judicata, providing record proof that Vuyyuru has ably used the judicial resources available to him to contest the Board's decision.

Finally, the Court does not believe an award of attorneys' fees alone will deter Vuyyuru from further contesting this matter, which has received ample hearing in the courts of this state. A court in this district previously entered an attorneys' fee sanction against Vuyyuru. In March 2006, Vuyyuru filed a complaint alleging False Claims Act (FCA) violations in this Court on

behalf of the United States. *See* 31 U.S.C. § 3730(b)(1). Vuyyuru named several defendants in that action that he names here, including Jadhav, Petersburg Hospital Company, LLC, and Columbia/HCA John Randolph, Inc. The United States declined to intervene. *United States ex rel. Vuyyuru v. Jadhav*, No. 3:06-CV-180, 2007 WL 951851, at *1 (E.D. Va. Mar. 28, 2007). As the basis of Vuyyuru's FCA claim, Vuyyuru alleged Jadhav fraudulently billed Medicaid, Medicare, and insurance companies in order to increase reimbursements for himself, JRMC, and SRMC. 2007 WL 951851, at *3. The Court concluded Vuyyuru's allegations were derived from public disclosures, finding Vuyyuru's allegations mirrored those published in his very own newspaper, the *Virginia Times*. 2007 WL 951851, at *1-3. *See* 31 U.S.C. § 3730(e)(4). The Court also concluded Vuyyuru's claim against one defendant, The Cameron Foundation, was clearly frivolous and awarded the defendant over $68,000 in attorneys' fees. *United States ex rel. Vuyyuru v. Jadhav*, No. 3:06-CV-180 (E.D. Va. Aug. 27, 2007). *See* 31 U.S.C. 3730(d)(4). The Fourth Circuit affirmed the award. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356-57 (4th Cir. 2009).

The Court is swayed by the fact that Vuyyuru was previously subject to a significant sanction award but nonetheless continued to file frivolous claims regarding a factually related incident. Hence, previous sanction awards have not deterred Vuyyuru. Furthermore, the claims he raised in this action have been heard and reheard by Virginia courts, and Vuyyuru redoubled his efforts and creatively repackaged those claims to evade the force of those previous rulings. The Court is simply not convinced its award of attorneys' fees will adequately deter Vuyyuru from raising these claims in federal court again.

The Court has considered all the factors affecting the propriety of a prefiling injunction. Pursuant to the terms of the Order accompanying this Memorandum Opinion, the Court orders

Vuyyuru to show cause as to why the Court should not enjoin him from filing any further lawsuit alleging an injury resulting from the Virginia Board of Medicine's May 19, 2006, order revoking Vuyyuru's license, without this Court's permission. Should he fail to show cause, the Court will issue an appropriate injunction.

V.  Conclusion

For the reasons stated above, the Court dismisses the plaintiffs' claims against all defendants, imposes sanctions upon Plaintiff Lokesh Vuyyuru and counsel, Stephen Dennison Smith, and orders Plaintiff Lokesh Vuyyuru to show cause why the Court should not enjoin him from filing any suits in federal court according to the terms the Court has set out.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this __18th___ day of April 2011