UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

LOKESH VUYYURU, et al.,

                                    Plaintiffs,

v.                                                      Action No. 3:10−CV−173

GOPINATH JADHAV, et al.,

                                    Defendants.

MEMORANDUM OPINION

       This matter comes before the Court on the defendants' motions for sanctions and a series of motions from Plaintiffs Lokesh Vuyyuru, Virginia Gastroenterology Associates, P.C., and Virginia Times, Inc. The Court held a hearing on these motions on August 2, 2011, and explains its decisions on them here.

       On April 19, 2011, the Court granted the Private Defendants' and Commonwealth Defendants' Motions to Dismiss.[1] The Court detailed the facts alleged in the plaintiffs' Amended Complaint, as well as Vuyyuru's relevant litigation history, in the memorandum opinion accompanying that dismissal ("April 19 judgment"). *See Vuyyuru v. Jadhav*, 2011 WL 1483725, at *1-4 (E.D. Va. April 19, 2011). Having explained the facts underlying the dismissal and these motions in that opinion, the Court dispenses with any recitation of the Amended Complaint's allegations and considers each motion in turn.

---

[1] The Commonwealth Defendants include defendants Judith Jagdmann, Robert McDonnell, Frank Pedrotty, John Stanwix, William Harp, Robert Nebiker, and the Virginia Board of Medicine. The Private Defendants include Gopinath Jadhav, Petersburg Hospital Company, LLC d/b/a Southside Regional Medical Center, Community Health Systems Professional Services, Inc., Columbia/HCA John Randolph, Inc., Anant Damle, David Fikse, Linda Ault, Kamalesh Dave, Sharad Saraiya, and John Doe Defendants 1 to 10.

1

I. <u>The Plaintiffs' Post-Dismissal Motions</u>

After the Court dismissed the Amended Complaint, the plaintiffs filed a series of motions challenging the Court's decision to grant the defendants' motions to dismiss and motions for sanctions. First, the plaintiffs moved for reconsideration of the Court's April 19 order and opinion dismissing the Amended Complaint. Second, the plaintiffs challenged the Court's act of granting the defendants' motions to dismiss without scheduling an oral argument. Pursuant to Federal Rule of Civil Procedure 60, the plaintiffs argue the Court should vacate its judgment because the defendants failed to comply with Local Rule 7(E). Additionally, pursuant to 28 U.S.C. § 455, the plaintiffs ask the Court to disclose its communications with the defendant or recuse itself from this case. They contend that the Court improperly communicated with the defendants in relation to the scheduling of a hearing of the defendants' motions to dismiss.

    A. *Motion for Reconsideration*

A court may reconsider a judgment if a party moves for relief within 28 days of the court's judgment. *See* Fed. R. Civ. P. 59. Reconsideration is an extraordinary remedy; courts use it sparingly. *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir. 1998). A court may only amend a judgment in order to accommodate an intervening change in controlling law, account for new evidence not available at trial, or correct a clear error of law or prevent manifest injustice. *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997). A party may not use Rule 59(e) to raise new arguments it could have raised before the court entered judgment, to continue arguing a case after the Court has ruled against him, or to reargue issues it argued prior to judgment. *Pacific Ins. Co.*, 148 F.3d at 402. Disagreement with the manner in which a court applies a legal standard to the facts of a given case does not constitute clear legal error remediable by Rule 59(e). *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th

Cir. 1993).

The plaintiffs essentially argue that the Court incorrectly applied Virginia law on claim preclusion, prosecutorial and quasi-judicial immunity, abuse of process, and business conspiracy. Even if it were inclined to do so, the Court plainly may not reconsider its April 19 judgment on the basis of the plaintiffs' disagreement with the Court's application of the law. The proper forum for the plaintiffs' arguments for reconsideration is on appeal.

    B. *Motion to Vacate, Motion for Disclosure, and Motion for Disqualification*

        1. <u>Applicable Law</u>

The plaintiffs move to vacate the Court's April 19 judgment, claiming the plaintiffs failed to comply with Local Rule 7(E). *See* Fed. R. Civ. P. 60(b). It appears the plaintiffs move under Rule 60(b)(6).[2] That provision allows a court to relieve a party from judgment for "any other reason that justifies relief." Rule 60(b)(6) provides courts "with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (citing *Klaprott v. United States*, 335 U.S. 601, 614-15 (1949)). Rule 60(b)(6) is construed strictly to preserve the finality of judgments, so that only "extraordinary circumstances" will justify relief. *Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004). The party seeking relief under Rule 60(b)(6) must demonstrate that the opposing party will not suffer unfair prejudice by having the judgment set aside. *Aikens v. Ingram*, 612 F.3d 285, 289 (4th Cir. 2010).

The plaintiffs' Rule 60(b) and disqualification motions implicate two local rules of this

---

[2] The plaintiffs also move under Rule 60(b)(3), which allows a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The plaintiffs believe they are entitled to relief from the Court's judgment in this proceeding because certain defendants allegedly committed fraud in an earlier proceeding. This argument fails. Rule 60(b)(3) would allow the Court to grant the plaintiffs relief only if they showed the defendants fraudulently obtained a judgment in *this* proceeding. Rule 60(b)(3) is not a proper vehicle for seeking relief on the claim that a party fraudulently obtained a judgment in a separate proceeding.

district. First, under Local Rule 7(E),

> the moving party shall be responsible to set [a] motion for hearing or to arrange with opposing counsel for submission of the motion without oral argument. Unless otherwise ordered, a motion shall be deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within thirty (30) days after the date on which the motion is filed. The non-moving party may also arrange for a hearing.

Second, Local Rule 7(J) permits the Court to decide a motion without an oral hearing.

Finally, § 455 requires a federal judge to "disqualify himself in any proceeding in which is impartiality might reasonably be questioned." Among the circumstances in which a judge must disqualify himself are where "he has a personal bias or prejudice concerning a party[.]" § 455(b)(1).

      2. <u>Analysis</u>

The plaintiffs take the position that the defendants' communications with the Court regarding the scheduling of a hearing on the motions to dismiss compromised the Court's objectivity. Even in the absence of biased communications between the Court and the defendants, the plaintiffs alternatively contend the defendants' failure to schedule a hearing on their motions to dismiss caused those motions to be withdrawn by operation of law.

The Commonwealth Defendants moved to dismiss the Amended Complaint on September 24, 2010, and the Private Defendants moved to dismiss three days later. Pursuant to the Court's order dated October 5, 2010, those motions became ripe for decision on November 1, 2010. During November 2010, counsel for both groups of defendants asked the Court's staff by telephone whether the Court planned to hold a hearing on the motions to dismiss. Court staff explained that the Court did not require a hearing in order to decide the motion and left the decision of whether to request a hearing to the parties. During that conversation, court staff did not assert or imply that it would directly notify plaintiffs' counsel about the Court's position on a hearing.

The plaintiffs contend court staff communicated with defendants' counsel inappropriately. In support, they rely on the defendants' account of those communications. In the defendants' joint response to the plaintiffs' motion to vacate, the defendants assert that the Court was "in contact" with counsel for both parties regarding a hearing on the motions to dismiss. (*See* Def.'s Joint Opp'n to Pl.'s Mot. to Vacate 1, Docket No. 92.) The defendants clarified their position at the August 2 hearing. They stated that counsel ended their conversation with court staff with the impression that the Court would initiate contact with counsel for the plaintiffs regarding a hearing. The plaintiffs interpret those statements to mean that court staff planned to, but did not, notify counsel for the plaintiffs that the Court did not need a hearing on the motions. On the basis of this interpretation, the plaintiffs contend the Court engaged in *ex parte* communications that conferred a competitive advantage on the defendants.

The plaintiffs' contention is built on an incorrect account of the facts. The defendants' statement in their joint response is incorrect, insofar as the plaintiffs interpret it to mean that court staff stated or implied that it would initiate contact with counsel for the plaintiffs regarding a hearing. As the Court explained above, court staff did not imply that it would notify plaintiffs' counsel that the Court did not need a hearing. Court staff's conversation with counsel for the defendants occurred in its entirety as detailed above. The Court's thoroughly unexceptional scheduling communications with defendants' counsel did not give the defendants an advantage or compromise the Court's objectivity.

Alternatively, the plaintiffs contend the Court should vacate its April 19 judgment, because communication between the Court and the defendants deprived the plaintiffs of an oral argument on the defendants' motions to dismiss. The plaintiffs principally argue that, pursuant to Local Rule 7(E), the defendants' motions to dismiss were withdrawn by operation of law

5

when the defendants failed to set their motions for oral argument within 30 days of filing. The plaintiffs added some texture to this argument at the August 2 hearing. The plaintiffs suggested it was the defendants' obligation, or the Court's obligation, to notify them that the defendants and the Court did not request an oral argument on the motions to dismiss. By notifying the defendants of their decisions, the plaintiffs explained, the Court and the defendants would have given the plaintiffs an opportunity to request a hearing on the motions to dismiss.

The plaintiffs misread Local Rule 7(E), and they misapply the rule to the events leading up to the Court's April 19 judgment. Rule 7(E) does not govern the Court's conduct in requesting a hearing on a motion. Rather, the rule governs the parties' conduct. The rule charges the movant with scheduling a hearing, should he desire one, within 30 days of moving for relief. Also, the rule expressly permits the non-moving party to request a hearing. Thus, the plaintiffs were entirely allowed to notify the Court of their desire to orally argue the defendants' motions to dismiss.

Considering those two parts of the rule in tandem makes it clear that it is incumbent upon a party—either the moving party or the non-moving party—to vindicate his right to an oral hearing. It is not for the Court to initiate contact with a party to determine whether he wants an oral hearing on a motion. The Court was proper in declining to do so here. And while the Court would prefer that a moving party communicate its decision not to seek a hearing to the non-moving party, the non-moving party cannot sit on his rights and complain that the moving party failed to make such a communication months after the Rule 7(E) time limit expired and, worse still, months after the Court decides the motion.

The defendants satisfied their obligation under the rule by communicating with court staff by telephone. At no time during the nearly six-month period between the expiration of the

6

defendants' Rule 7(E) deadline and the Court's April 19 judgment did the plaintiffs notify the Court of their desire to orally argue the motions to dismiss. Rule 7(E) fully empowered the plaintiffs either to request a hearing on the motions to dismiss or notify the Court that the defendants had not communicated their decision not to seek a hearing to the plaintiffs. Between their motion to vacate and their argument at the Court's oral hearing, the plaintiffs amply demonstrated their familiarity with the Local Rules. Hence, the plaintiffs cannot claim surprise that the Court issued its judgment without an oral hearing. Once the plaintiffs failed to note their desire for a hearing, Rule 7(J) permitted the Court to decide the motions.

In sum, the Court did not issue its judgment in violation of Local Rule 7(E), and the defendants did nothing to impede the plaintiffs from vindicating their right to an oral hearing under the rule. Therefore, the plaintiffs have not supplied the Court with any basis justifying relief, much less the "extraordinary circumstances" required to justify vacatur under Rule 60(b)(6). *Reid*, 369 F.3d at 370.

II. Defendants' Motions for Sanctions

In its April 19 judgment, the Court granted the defendants' motions for sanctions. The Court reasoned that the Amended Complaint's vague and speculative allegations gave the plaintiffs' claims "absolutely no chance of success under the existing precedent." *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987) (internal citation omitted). *See Vuyyuru*, 2011 WL 1483725, at *21-25. The Court has now fashioned an appropriate sanctions award.

A court must impose a sanction sufficient "to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). In fashioning an

appropriate monetary sanction, the Fourth Circuit directs a court to consider "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors relating to the severity of the Rule 11 violation." *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990). The Court has considered the defendants' fee petitions and the *Kunstler* factors. For reasons stated below, the Court awards the defendants 10% of the fees they each seek.

    A. *Reasonableness of Defendants' Attorneys' Fees*

In deciding whether an attorney's bill is reasonable, the Court must consider the twelve factors the Fourth Circuit adopted in *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978).[3] Then, the Court "need not do more . . . than state whether the fee is reasonable." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1387 (4th Cir. 1991).

The defendants' properly limited their fee requests to those incurred in defending against the plaintiffs' claims. The Court concludes the defendants' fee requests are reasonable, in light of the fees charged in comparable cases by attorneys in this geographic area, the quality of the attorneys and the labor they expended, and the serious undesirability of frivolous cases of this nature within this legal community.

    B. *Minimum to Deter*

With respect to the second *Kunstler* factor, the Fourth Circuit instructs courts to keep in mind the "limited purposes" of Rule 11 in fashioning an award. *In re Kunstler*, 914 F.2d at 524. The purpose of the rule is the deterrence of attorney and litigant misconduct, and the Court must

---

[3] Those twelve factors include (1) the time and labor expended, (2) the novelty and difficulty of the questions raised, (3) the skill required to properly perform the legal services rendered, (4) the attorney's opportunity costs in pressing the instant litigation, (5) the customary fee for like work, (6) the attorney's expectations at the outset of litigation, (7) the time limitations imposed by the client or the circumstances, (8) the amount in controversy and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case within the legal community in which the suit arose, (11) the nature and length of the professional relationship between the attorney and client, and (12) attorneys' fee awards in similar cases. *Barber*, 577 F.3d at 226 n.28.

choose "the least severe sanction adequate to accomplish [this] purpose." *Id.* at 523. The Court has fashioned a sanction award bearing in mind that Rule 11 sanctions are not intended to reimburse the defendants but rather to deter counsel for the plaintiffs from filing plainly frivolous suits such as this one.

C. *Counsel's Ability to Pay*

Counsel's ability to pay is "reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *Id.* at 524 (citation omitted). Where the attorney is unable to pay a sanctions award, "the court may impose modest sanctions to deter future baseless filings." *Brubaker*, 943 F.2d at 1388 n.39. Based on counsel's elocution at the oral hearing, the Court concludes counsel for the plaintiffs is unable to pay the full fees requested. Nonetheless, for the reasons stated above, the Court finds reason to impose a penalty in order to deter counsel from filing baseless suits.

D. *Factors Relating to the Severity of the Rule 11 Violation*

Finally, other factors the court may consider in deciding on the size of sanctions include "the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate[.]" *In re Kunstler*, 914 F.2d at 524-25.

The plaintiffs' conduct meriting the sanctions was moderately severe. As the Court explained in its April 19 judgment, the Court has not detected in the plaintiffs' litigation conduct any intent to harass the defendants or cause the Court unnecessary delay. Nonetheless, the plaintiffs' belief in the righteousness of their cause is tantamount to a reasonable belief in its chances of success. Even on a generous reading, the Amended Complaint plainly lacked factual development necessary to support numerous elements of the plaintiffs' claims. In particular, the

plaintiffs alleged four claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)). A RICO claim can exact a "devastating" cost to defendant's reputation and finances. *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F.Supp.2d 300, 309 (S.D.N.Y. 2009.) Civil litigants must handle RICO with care. The plaintiffs failed to do so. Notably, the plaintiffs did not attempt to defend the RICO claims in their motion for reconsideration, even as they defended their abuse of process and business conspiracy claims.

Therefore, the Court will award the defendants 10% of the fees they requested. The Court awards attorneys' fees to the Commonwealth Defendants in the amount of $4,256.88; Columbia/HCA John Randolph, Inc., Linda Ault, and Sharad Saraiya in the amount of $4,670.96; Petersburg Hospital Company, LLC, Community Health Systems Professional Services Corporation, David Fikse, and Kamelesh Dave in the amount of $2,902.45; Anant Damle in the amount of $3,308.12; and Gopinath Jadhav in the amount of $2,877.28.

III. <u>Pre-Filing Injunction</u>

The Court also concludes it is appropriate to enjoin Plaintiff Lokesh Vuyyuru from filing further federal actions related to the revocation of his medical license. The Court allowed Vuyyuru over five weeks to show cause why the Court should not enjoin him. Vuyyuru filed a response and additionally asked the Court to clarify certain terms of the pre-filing injunction. The Court also held a two-hour hearing on August 2, 2011, much of which was devoted to the proposed injunction. In fashioning the terms of the injunction, the Court has taken into account

Vuyyuru's written response, motion for clarification, and statements at the hearing.

Nevertheless, Vuyyuru's input has not changed the Court's conclusion that a pre-filing injunction is appropriate. The Court stands by its opinion that, while Vuyyuru may genuinely believe he was wronged by the Board and other named defendants, his repeated inability to satisfy even the most basic legal requirements for making out a claim has turned his cause into an exercise in bad faith. *See Vuyyuru*, 2011 WL 1483725, at *26. Even omitting the 2006 False Claim Act action Vuyyuru filed in this district, Vuyyuru has a history of filing duplicative and vexatious lawsuits challenging the Board's decision to revoke his license. *See Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 818 (4th Cir. 2004). This action is his fourth in this district since 2006, *see Vuyyuru*, 2011 WL 1483725, at *3-4, and it is by far his most exhaustive and surely the most time-consuming. Vuyyuru's perseverance in filing actions without factual support convinces the Court that an award of monetary sanctions alone is unlikely to deter him from challenging his license revocation in federal court.

Vuyyuru contends he does not merit a pre-filing injunction. Since the Board's revocation proceeding was the product of fraud, Vuyyuru argues, the cases denying his challenges to the Board proceedings were invalid as well. This argument fails to persuade the Court of the reasonableness of Vuyyuru's federal litigation conduct. Perhaps if Vuyyuru could demonstrate some factual basis for his repeated challenges, the demonstration would at least convince the Court not to restrain Vuyyuru from making further challenges. But after numerous previous filings, including several federal actions, Vuyyuru has failed to come close to supplying the necessary factual and legal prerequisites to support his claim that his license revocation was the product of some retaliatory cabal. To say the least, Vuyyuru has had ample opportunity to specifically demonstrate that he was deprived of certain rights during the revocation proceedings.

11

Since he has failed to make such a showing after repeated attempts, the Court finds it appropriate to restrain him from further taxing the federal courts' time and energy making unsupported claims.

While the terms of the pre-filing injunction will remain largely the same as those suggested in the April 19 judgment, the Court has taken Vuyyuru's response into consideration. The injunction will bar Vuyyuru only from filing an action claiming an injury resulting from the Board's May 19, 2006, order revoking his license. It will prohibit him from seeking injunctive and monetary relief. The Court has no power to prohibit Vuyyuru from seeking reinstatement of his license or other remedies at the state level, and so it does not attempt to do so. Therefore, the pre-filing injunction will only bar federal actions.

IV. Conclusion

For the reasons stated above, the Court denies the plaintiffs' pending motions, awards the defendants attorneys' fees, and enjoins Vuyyuru from filing any action claiming an injury resulting from the Virginia Board of Medicine's May 19, 2006, order revoking his license.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this __30th__ day of August 2011